**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**RICHARD ROBERT HUGHES,**

    **Plaintiff,**

        **v.**

**ANDREW OPEL, *et al.*,**

    **Defendants.**

*

*

*

*

*

*

**Civ. No. JKB-23-1974**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Richard Robert Hughes, proceeding pro se, has filed suits against various officials of the City of Cumberland: Patrol Officer Andrew Opel, Police Chief John "Chuck" Ternent,[1] Assistant State's Attorney Kelly Lysinger, District Court Commissioner William Wilhelm, 911 Dispatcher Abbey Bevan,[2] Patrolman Trevor Baluch, and Corporal Derrick Pirolozzi, as well as the City itself via its mayor, Raymond M. Moriss. (ECF Nos. 1 at 2, 20 at 7.) Wilhelm has been dismissed from this case. (ECF No. 4 at 3.) The various suits have been consolidated, (ECF No. 4), and, for the purposes of this opinion, the Court will consider all four remaining Complaints (ECF Nos. 1, 6, 7, 8) collectively. Moriss, Pirolozzi, and Baluch are sued in their official capacities only. (ECF Nos. 1, 20.) Opel, Ternent, and Lysinger are sued in both their official and individual capacities. (ECF Nos. 1, 6, 7, 8.)

---

[1] Mr. Ternent's name is spelled in a variety of ways in the pleadings and briefing; the Court will use the spelling in his motion.

[2] Ms. Bevan has changed her surname to Baluch. Given that she refers to herself as Bevan in her motion and Trevor Baluch is also a party to this action, the Court will refer to her as Bevan throughout.

Before the Court are various motions filed by Defendants: three Motions to Dismiss or for Summary Judgment, filed by Ternent (ECF No. 9), Opel (ECF No. 21), and Bevan (ECF No 31); two Motions to Dismiss, filed by Lysinger (ECF No. 15), and collectively by the City of Cumberland, Baluch, Moriss, and Pirolozzi (ECF No. 24); and one Motion for Leave to File Audio Records, filed by Bevan (ECF No. 32). In addition, Hughes has filed a Motion to Enter Physical Exhibits (ECF No. 23), has opposed the Defendants' Motions (ECF Nos. 18, 19, 27, 30, 34) and has supplemented his oppositions (ECF Nos. 36, 37, 38).[3]

Having reviewed all of the Parties' submissions, for the reasons below, the Court will grant the Motions to Dismiss, and deny the Motions for Summary Judgement and Motions to Enter Exhibits as moot. Hughes's Complaints will be dismissed in their entirety.

## I.   LEGAL STANDARD

To survive the Motions to Dismiss, Hughes's Complaints must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). If the complaint offers mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" it will not suffice. *Id.* (cleaned up).

Pro se pleadings are "held to less stringent standards." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). But Hughes must still plead a plausible claim, and the Court "may not act as an advocate" even though Hughes is self-represented. *Desgraviers v. PF-Frederick, LLC*, 501 F.Supp.3d 348, 351 (D. Md. 2020). Further, the Court is not required to "conjure up

---

[3] While the Supplements may actually be procedurally improper surreplies filed without leave, the Court has considered them in light of Hughes's pro se status.

2

questions never squarely presented" or "construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. FACTUAL BACKGROUND

This case stems from an altercation at an M&T Bank in Cumberland, Maryland on December 30, 2021. (ECF No. 1 at 16.) Hughes has separately sued M&T Bank and various bank employees. *Hughes v. M&T Bank*, Civ. No. JKB-23-1993 (D. Md. 2023). At some point during Hughes's visit to the bank, bank employee Dawn Lewis called the police. (*See* ECF No. 1 at 16.) She told Abbey Bevan, a 911 dispatcher, that there was "an irate customer" in the bank and said that they needed "somebody to go out there as soon as possible um to escort the gentleman out." (ECF No. 34-7.)[4] Lewis told Bevan that Hughes was "being very rude" and that the bank employees suspected that Hughes was "trying to take advantage of his mother and trying to get her to put all the money into his account." (*Id.*) Lewis said that Hughes was "being very irate" and that the bank employees on site felt "very uncomfortable." (*Id.*) Hughes alleges that these claims from Lewis were "fraudulent." (ECF No. 1 at 16.) Bevan then contacted Opel, a patrol officer, and told him that "there is a male subject in [M&T Bank's] lobby causing a disturbance refusing to leave." (ECF No. 34-7.)

Opel then went to the bank where he encountered Hughes. Opel asked for Hughes's identification, which Hughes refused to provide. (ECF No. 1 at 33.) Opel then arrested Hughes,

---

[4] Because the Parties do not appear to dispute what was said during the 911 call, the Court will consider Hughes's transcript of the call, which he has appended to his briefing. While Hughes may not ordinarily amend his briefing by appending additional materials, where the appended materials operate to defeat his claims, the Court will consider them in its discretion and in the interest of judicial economy. Because Hughes has taken a position before the Court regarding what was said during the 911 call, he is bound by that position. Hughes cannot object to the Court's considering materials he himself submitted. Since he has suggested that his transcript of the call is accurate, and the Defendants have not objected, the Court will presume that the contents are accurate. *See USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, No. 19-2308, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021) ("[I]f a plaintiff attached documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim. Animating this rule is the presumption that the plaintiff has adopted as true the contents of that document.") (quotations and citation omitted).

3

"accost[ed]" him, and patted him down, including a search of his pockets. (*Id.* at 13.) Hughes was charged and held for approximately nine and a half hours. (ECF No 6 at 20.) Hughes alleges that the charges were false. (ECF No. 1 at 23.) During the arrest, Opel "consistently made demeaning statements when referring to" Hughes. (*Id.* at 37.) Baluch and Pirolozzi "corroborat[ed]" Opel's actions by failing to intervene to stop him and permitting the proceedings to continue. (*Id.* at 37–38.) Hughes's terminally ill mother witnessed the arrest, causing both of them distress. (ECF No. 7 at 14.) Opel and Ternent "obstructed justice by intentionally lying about a witness, withholding the witness's name, and refusing to reveal exculpatory information." (ECF No. 1 at 36.)

Lysinger was the initial prosecutor on the case and brought the charges before Judge Bean of the City of Cumberland District Court.[5] (*See id.* at 28.) She failed to provide Hughes with access to the evidence against him. (*Id.* at 40–41.) Hughes eventually declined a plea agreement. (*Id.* at 42.) Subsequently, on July 19, 2022, the charges were dropped. (ECF Nos. 6 at 6, 8 at 8.) Hughes alleges, however, that the false charges and unlawful arrest "caused immense personal and professional harm." (ECF No. 6 at 6.)

## III.   ANALYSIS

Hughes brings numerous claims, including various constitutional claims, claims under the Declaration of Independence, the Universal Declaration of Human Rights, the Freedom of Information Act ("FOIA") and the Maryland Public Information Act ("MPIA"), and claims for defamation, slander, and/or libel, "false allegations," intentional infliction of emotional distress ("IIED"), fraud, coercion, conspiracy, false arrest, "law enforcement misconduct," "failure to

---

[5] Eventually, Jacqueline Phillips appears to have taken over the prosecution, though the sequence of events and relative responsibilities of these two prosecutors is not clear. (*See* ECF No. 8 at 8.) Phillips dismissed the charges. (*Id.*) She is not a party to this case.

supply discovery," and "prosecutorial misconduct." The Court will begin by addressing the liability of certain Defendants, then turn to specific claims.

### A.    City of Cumberland

Hughes brings suit against the City of Cumberland via its Mayor, Raymond M. Moriss. (ECF No. 13.) However, "Maryland law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary." *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. Ct. Spec. App. 2013) (citation omitted). Operating a police department is "quintessentially governmental." *Id.* at 791.[6] Accordingly, the City of Cumberland and Moriss are immune from suit for the common law claims and all such claims will be dismissed with prejudice.

### B.    Prosecutorial Immunity

Hughes alleges that Lysinger, the Assistant State's Attorney, "allowed false allegations, an unsupported charging document, and a probable cause statement to remain in [her] possession as valid documents and entered these unsupported documents into the courtroom [] as factual without any investigation or evidence to prove these statements were true and correct." (ECF No. 8 at 2.) He further alleges that she failed to provide him with discovery. (*Id.* at 18.)

However, because prosecutorial immunity absolutely protects Lysinger from suit here, all claims against her will be dismissed with prejudice. *See State v. Rovin*, 246 A.3d 1190, 1206 (Md. 2021) ("Prosecutorial immunity is another type of absolute immunity and is also a common law doctrine."). "[T]he purpose of prosecutorial immunity is to protect prosecutors' independent

---

[6] Under the Local Government Tort Claims Act, a "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). Thus, the City can be required to indemnify its employees to the extent any alleged tortious acts were committed within the scope of their employment. *See Balt. City Police Dep't v. Potts*, 227 A.3d 186, 197 (Md. 2020). But, since no claims against any Defendants will survive, even assuming a claim for indemnification against the City could be read into any of Hughes's Complaints, any such indemnification claim would be dismissed.

5

decision-making by ensuring that fear of unfounded lawsuits does not affect their actions." *Id.*
So, prosecutors have "absolute immunity with respect to claims arising from their role in the
judicial process," including claims regarding "evaluating whether to commence a prosecution by
criminal information, presenting evidence to a grand jury in the quest for an indictment, filing
charges, preparing and presenting the State's case in court, and terminating a prosecution with or
without prejudice." *Id.* at 1207 (cleaned up). The same protection applies to the claims brought
under § 1983. *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune
from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the
State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal
process.'") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Prosecutorial immunity
applies even where harm may have been caused or where the prosecutor's actions were unlawful.
*Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993).

All of Lysinger's allegedly unlawful conduct was "intimately associated with the judicial
phase of the criminal process" and therefore protected by prosecutorial immunity. *See Imbler*, 424
U.S. at 430. Lysinger acted as an advocate when she reviewed the charges against Hughes and
initiated and continued the prosecution, as well as when she engaged in discovery with Hughes.
Prosecutors are immune from suits for damages while doing such tasks, including deciding what
information to disclose to defense counsel. *See Rovin*, 246 A.3d at 1209; *Carter v. Burch*, 34 F.3d
257, 262–63 (4th Cir. 1994) (holding that a prosecutor is shielded by absolute immunity when
deciding whether or when to turn over exculpatory information). Accordingly, all claims against
Lysinger will be dismissed with prejudice.[7]

---

[7] Having concluded that Lysinger is entitled to prosecutorial immunity, the Court need not address her contentions
that she is entitled to Eleventh Amendment Immunity or statutory immunity under the Maryland Tort Claims Act.

### C. Defamation, Slander, and Libel

Hughes alleges that Bevan slandered Hughes by rephrasing Lewis's 911 call while speaking with Opel. (ECF No. 1 at 19.) He further alleges that Ternent allowed someone to post about the incident on the police department's social media, which twisted the incident into something even more "outlandish" than the actual events. (ECF No. 7 at 9.) This defamation, slander and/or libel claim is, however, time-barred because all actions for libel or slander in Maryland must be brought within one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105. Hughes filed suit well over a year after the events of December 30, 2021 and more than a year after his case was nolle prossed on July 19, 2022, and so the statute of limitations has run out. *See Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D. Md. 2014) ("The limitations period begins to run on the date the statements are improperly communicated.") (citation omitted); (*see also* ECF No. 1 (Complaint filed July 21, 2023)).

Hughes attempts to invoke the discovery rule, arguing that the clock on the statute of limitations did not start running until he discovered the defamatory statements. (ECF No. 18 at 5.) However, this argument is unavailing because Hughes does not state when or how he discovered the allegedly defamatory remarks. The Court notes that Hughes attached a copy of the social media post (ECF No. 19-15) and that it is dated December 31, 2021. Hughes does not, however, offer any details indicating that he first saw the post within a year of filing this suit. Accordingly, all claims for defamation, slander, and libel will be dismissed with prejudice.

### D. False Allegations

Hughes alleges that Bevan rephrased the unwarranted 911 call from Lewis into false allegations, which Opel and Baluch used to create fraudulent charging and probable cause documents, which Lysinger then continued to prosecute. (ECF No. 1 at 23–24.) However, the

7

Court is not aware of any cause of action for "false allegations" at common law, nor does Hughes provide any legal support for such a claim. Further, and more importantly, even if Lewis's allegations as told to Bevan during the 911 call were entirely false, Hughes has not presented the Court with any alleged facts indicating that Bevan knew or should have known that they were false. The Court is unable to discern any possible claim here, and accordingly all claims of "false allegations" and all claims against Bevan, whose sole participation in these events were receiving and dispatching the 911 call, will be dismissed with prejudice.[8]

### E.      Universal Declaration of Human Rights

Hughes alleges that the Defendants violated various Articles of the United Nations Universal Declaration of Humans Rights. (ECF No. 1 at 9–11.) However, United States courts do not recognize a private right of action under the Declaration. *Muwwakk'el v. Haefner*, Civ. No. RDB-14-666, 2015 WL 727946, at *3 (D. Md. Feb. 18, 2015) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)). Accordingly, Mr. Hughes's claims pursuant to the United Nations Universal Declaration of Human Rights will be dismissed with prejudice.

### F.      Declaration of Independence

Hughes brings a claim under the Declaration of Independence. (ECF No. 1 at 9.) However, the Declaration of Independence does not include any private right of action, nor does it provide any rights enforceable in court. *See Rywelski v. Biden*, 2023 WL 4440656, at *2 (N.D. Okla. July 10, 2023) (collecting cases). Accordingly, any claims pursuant to the Declaration of Independence will be dismissed with prejudice.

---

[8] Having dismissed Bevan, the Court need not consider whether she might also have statutory immunity.

8

### G.    Constitutional Violations

Hughes alleges various constitutional violations pursuant to 42 U.S.C. § 1983.  To state a claim under § 1983, Hughes must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  There does not appear to be any dispute that the Defendants were all acting under color of state law, so the Court will consider only whether Hughes has adequately stated a constitutional claim.

#### 1.    First Amendment

Hughes alleges that his First Amendment rights were violated when he tried to speak but was told he was disturbing the peace and to wait to speak to his attorney.  (ECF No. 1 at 12.)  This is not a cognizable First Amendment injury.  Hughes does not make clear what he was trying to say or the manner in which he was speaking, making it impossible, based on his allegations, for the Court to determine whether he was, in fact, disturbing the peace.  Further, he does not allege who actually stopped him from speaking, again preventing the Court from evaluating whether he has stated a claim.  Lastly, being advised of one's *Miranda* rights and advised to speak to one's attorney before speaking to law enforcement is not a First Amendment violation.  Accordingly, the First Amendment claim will be dismissed with prejudice.

#### 2.    Fourth Amendment & False Arrest

Hughes alleges that his Fourth Amendment rights were violated when Opel demanded Hughes's identification, arrested him without probable cause, accosted him, patted him down, and searched him.  (ECF No. 1 at 13.)  He fails to state a claim under the Fourth Amendment, and accordingly the Fourth Amendment claims and false arrest claims will be dismissed.

To bring a false arrest claim, a "plaintiff must establish that the defendant deprived him or her of his or her liberty without consent and without legal justification." *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000) (quotation omitted). "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "There is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011) (quotation omitted). Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Carillo-Rivas*, 438 F. App'x 227, 228 (4th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Probable cause is "not a high bar." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quotation omitted). Probable cause merely requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Nero v. Mosby*, 890 F.3d 106, 130 (4th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 243 n.13 (1983)). The officer need only have "a reasonable ground for belief of guilt" that amounts to "more than bare suspicion." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011) (quotation omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause for *any* offense is sufficient. *Devenpeck*, 543 U.S. at 153.

10

Here, Hughes alleges that Opel went to the M&T Bank after having been told by Bevan that there was a man there "causing a disturbance [and] refusing to leave." (ECF No. 34-7.) Without more information about the circumstances, that is sufficient for probable cause to arrest Hughes. While Hughes avers that this information from Lewis was false, (ECF No. 37 at 1–2) there is nothing in his allegations indicating that Opel knew or had reason to know that. Without any additional facts about what was happening in the bank, what was apparent to Opel, and what Hughes was doing, the Court is left with no basis to conclude that Opel relying on the 911 call from Lewis was unacceptable under the Fourth Amendment. Hughes argues that his arrest was unlawful, but that is a legal conclusion and he must plead facts to support it, which he has failed to do. Probable cause is determined based on what is known to the officer at the time of the arrest. Here, all that Hughes's pleadings and briefing show is that Opel thought there was man trespassing and causing a disturbance at the bank, whom he then arrested. Accordingly, Hughes has failed to allege that his arrest was unlawful.

Hughes also alleges that the search conducted by Opel was unlawful. But a search incident to a lawful arrest is itself lawful. *United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."). Lastly, Hughes alleges that Opel "accost[ed]" him. (ECF No. 1 at 13.) While an arrest done with excessive force is unlawful, *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003), Hughes's allegations are devoid of any detail about what Opel actually did to "accost" Hughes. Without allegations describing the circumstances, the Court cannot conclude that any force was unlawfully excessive. *See Smith v. Murphy*, 634 F. App'x 914, 916 (4th Cir. 2015) ("The question is whether a reasonable officer would have determined that the degree of force used was justified by the threat presented, an objective inquiry requiring careful attention to

11

the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.") (cleaned up).

Given the insufficient detail, the Court cannot conclude that Hughes has shown "plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotation omitted). Accordingly, the Fourth Amendment claims and false arrest claims will be dismissed.

### 3. *Fifth Amendment*

The Court has not discerned any possible Fifth Amendment violation other than a Due Process violation. Because the Fifth Amendment Due Process Clause applies to the federal government, and, in any case, is judged on the same standards as the Fourteenth Amendment Due Process Clause, *United States v. Al-Hamdi*, 356 F.3d 564, 573 n.11 (4th Cir. 2004), the Court will consider only the Fourteenth Amendment claims and the Fifth Amendment claims will be dismissed with prejudice.

### 4. *Sixth Amendment*

Hughes alleges that Opel, Ternent, and Lysinger violated the Sixth Amendment by "not informing him of the nature and cause of the accusations against him or the witnesses against him." (ECF No. 1 at 14.) The Court will construe this as a claim under *Brady v. Maryland*. 373 U.S. 83 (1963). He alleges that Lysinger "failed to present the necessary evidence" to Hughes and that at some point he had to appear before a judge "without knowledge of the evidence to be presented." (ECF No. 1 at 40.) However, these allegations lack the specificity needed to state a claim under *Brady*, even assuming that a *Brady* claim is viable where, as here, the plaintiff never went to trial. It is not clear what evidence was not turned over, nor does Hughes explain what prejudice resulted

12

from the failure to turn over that evidence. Accordingly, Hughes has failed to state a claim under the Sixth Amendment, and such claims will be dismissed with prejudice.

### 5.    *Seventh Amendment*

Hughes alleges that Opel violated his Seventh Amendment rights by "neglecting to inform [him] of the nature of [his] alleged offenses and subjecting [him] to cruel and unusual punishment through an unlawful arrest." (ECF No. 6 at 4.)  The Seventh Amendment, however, covers civil trials and is inapplicable here. Accordingly, the Seventh Amendment claims will be dismissed with prejudice.

### 6.    *Eighth Amendment*

Hughes alleges that Opel, Ternent and the City violated his Eighth Amendment rights by holding him against his will, which he alleges constitutes cruel and unusual punishment. (ECF No. 1 at 14.). As described above, Hughes has failed to allege that his arrest was unlawful, and there are no well-pled facts in the Complaints that would allow the Court to conclude that the subsequent nine-hour confinement was unlawful.  Nor does Hughes make any allegations about the conditions of confinement that would support his contention that he experienced cruel and unusual punishment.  Merely being held for nine hours, without more, does not constitute an Eighth Amendment violation. *See United States v. Hunter*, 735 F.3d 172, (4th Cir. 2013) ("The Eighth Amendment protects individuals against *excessive* sanctions.") (emphasis added). Accordingly, the Eighth Amendment claim will be dismissed with prejudice.

### 7.    *Ninth Amendment*

Hughes does not explain how the Ninth Amendment was violated, nor can the Court discern any possible violation. Accordingly, the Ninth Amendment claims will be dismissed with prejudice.

13

### 8.      *Tenth Amendment*

Similarly, Hughes does not explain how the Tenth Amendment was violated and the Court cannot discern any way in which it could have been. Accordingly, the Tenth Amendment claims will be dismissed with prejudice.

### 9.      *Fourteenth Amendment*

Hughes alleges that the Defendants violated the Fourteenth Amendment by depriving Hughes of "life, liberty, or property without due process." (ECF No. 1 at 15.) He does not, however, explain how this happened, what, specifically, he was deprived of, or offer any additional details regarding this claim. Accordingly, it will be dismissed.

### 10.      *Article Six*

Hughes does not explain what clause of Article Six he contends was violated nor does he explain how any violation took place. Accordingly, the Article Six claims will be dismissed with prejudice.

### 11.      **Monell** *Liability*

Hughes brings suit against Baluch, Bevan, Lysinger, Opel, Pirolozzi, and Ternent in their official capacities. Baluch, Pirolozzi, and Bevan are sued *only* in their official capacities. (ECF Nos. 1, 6, 7, 8.) Official capacity suits are actually suits against the municipal entity employing the alleged tortfeasor, here the City of Cumberland. *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F.Supp.3d 519, 538–39 (D. Md. 2019). Suits against municipalities are permitted under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Plaintiffs must identify a

14

municipal policy or custom that caused the injury to hold a municipality liable under § 1983. *Id.* There are three ways a plaintiff can demonstrate such an official policy: (1) "a written ordinance or regulation"; (2) "certain affirmative decisions of policymaking officials"; and (3) "certain omissions made by policymaking officials that manifest deliberate indifference to the rights of citizens." *Saltz v. City of Frederick*, 538 F.Supp.3d 510, 554 (D. Md. 2021) (quotation omitted). Hughes appears to suggest that the City has supervisory or training deficiencies. (ECF No. 1 at 13.)

To state a "failure to train" claim a plaintiff must allege (1) that "an employee of the municipality violated the plaintiff's constitutional or statutory rights," (2) "the municipality failed to train its employees, manifesting a 'deliberate indifference' to the rights of citizens," and (3) "the failure to train actually caused the employees to violate the plaintiff's rights." *See Artiga Carrero v. Farrelly*, 270 F.Supp.3d 851, 864 (D. Md. 2017) (citing *Canton*, 489 U.S. at 388–92). A plaintiff must do more than offer "bald assertions that [officers] were not properly trained." *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *18 (D. Md. Nov. 8, 2019). To state a supervisory liability claim, a plaintiff must allege (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quotations and citations omitted).

Hughes has not adequately pled a failure to train or supervisory liability claim. Any assertions about Ternent's or the City's training and supervision are merely boilerplate and fail to

15

explain *how* the training was lacking. For example, Hughes alleges that Ternent allowed "an unproductive and unprofessional City of Cumberland Police Department police officer to submit false allegations to and before the court through [Opel's] unsubstantiated charging documents and manufactured probable cause statements" which "lack supporting evidence." (ECF No. 7 at 11.) But Hughes fails to allege facts raising an inference that Ternent knew about Opel's allegedly unlawful behavior. Nor has Hughes adequately alleged that the City, Ternent, or Moriss were aware of the training/supervision failures or what they did (or failed to do) in response. Alleging mere "adherence to an impermissible custom" without facts buttressing that legal conclusion is insufficient. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014). Hughes's allegations are conclusory and non-specific, merely alleging that Ternent is liable because of the "lack of training, leadership, and accountability." (ECF No. 1 at 13.) This is patently insufficient.

Further, Hughes has failed to allege an underlying constitutional violation, as described above. For the City of Cumberland to be held liable for an unconstitutional policy, such as a failure to train or supervise, there must be an adequately alleged underlying constitutional violation committed by a municipal employee, as explained above. Hughes's *Monell* claims necessarily fail where he has failed to allege the underlying violation. Accordingly, all constitutional claims against the Defendants in their official capacities and the City of Cumberland will be dismissed with prejudice.

## H.    Intentional Infliction of Emotional Distress

Hughes alleges that being subjected to an unlawful arrest in the presence of his disabled mother was "reckless" and "extreme," causing him emotional distress. (ECF No. 1 at 25–26.) To state an IIED claim, Hughes must plausibly allege that "(1) [t]he conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is causal connection between

16

the extreme and outrageous conduct and the resultant distress; and (4) the emotional distress is severe." *Haines v. Vogel*, 249 A.3d 151, 162–63 (Md. Ct. Spec. App. 2021) (citing Restatement (Second) of Torts § 46 and *Harris v. Jones*, 380 A.2d 611 (1977)). Hughes fails at the second step. He has failed to allege that his arrest was unlawful, and a lawful arrest is neither extreme nor outrageous. *See Pegg v. Herrnberger*, 845 F.3d 112, (4th Cir. 2017) ("A lawful arrest performed without excessive force is, at worst, conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent.") (quotation omitted). Being arrested is distressing and the Court does not doubt that it was very difficult for Hughes. However, lawful arrest without some bad action, excessive force, or other violation cannot make the arresting officer, or anyone else, liable for IIED. Accordingly, Hughes's IIED claims will be dismissed.

## I. Fraud

Hughes alleges that Bevan dispatched "fraudulent allegations and misleading language" to Opel, Baluch, and Pirolozzi, leading to Hughes's arrest. (ECF No. 1 at 27.) To successfully bring a fraud claim, Hughes must plausibly allege (1) that the Defendants "made a false representation to" him, (2) "the falsity of the representation was either known to" the Defendants "or the representation was made with reckless indifference to its truth," (3) "the misrepresentation was made for the purpose of defrauding" Hughes, (4) Hughes "relied on the misrepresentation and had the right to rely on it," and (5) Hughes "suffered compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013) (citation omitted). Hughes fails at the first step. While he alleges that various fraudulent statements were made, all of the fraudulent statements are made *about* him to third parties, not *to* him. *See id.* at 51 ("Maryland law does not permit a third party to recover damages for fraud purely on the basis of

a false statement made to a governmental entity.") Accordingly, Hughes's claims for fraud will be dismissed.

### J.  Coercion

In support of his coercion claims, Hughes alleges that Opel demanded his identification while in the bank and handcuffed him when he refused to comply. (ECF No. 1 at 29.) He further alleges that Lysinger used her authority to coerce Hughes "to be a pawn" in her "court game." (*Id.* at 31, ECF No. 6 at 13.) He brings his coercion claims under 25 C.F.R. § 11.406 and 42 U.S.C. § 3617. (ECF No. 1 at 29.) 25 C.F.R. § 11.406, however, is a criminal provision administered by the Bureau of Indian Affairs, and so, even if Hughes were able to bring an action pursuant to it, it is inapplicable to this situation. 42 U.S.C. § 3617 is a provision preventing coercion of people enjoying their fair housing rights and is similarly inapplicable. Accordingly, Hughes's coercion claims will be dismissed with prejudice.

### K.  Entrapment

Hughes alleges that Opel blocked Hughes's "ability to exit" the bank and "unjustly restricted [Hughes's] freedom of movement." (ECF No. 6 at 16.) While he styles this as an "entrapment" claim, he pivots in his briefing, arguing that this is an "unlawful detainment" claim, which the Court will construe as a false imprisonment claim. (ECF No. 18 at 11.) First, entrapment is a defense available to some criminal defendants, not an independent cause of action for civil litigants like Hughes. *See Kondrat v. O'Neill*, 815 F.2d 78 (6th Cir. 1987) (unpublished table decision). Second, to succeed on a claim of false imprisonment, Hughes must allege that the Defendants deprived him of his "liberty without consent and without legal justification." *See State v. Roshchin*, 130 A.3d 453, 459 (Md. 2016). However, the Court has already concluded above

that, based on Hughes's allegations, there was legal justification for the arrest. Accordingly, this claim will be dismissed.

### L.    Law Enforcement Misconduct

Hughes alleges that Opel, Baluch, and Pirolozzi "willfully violated [Hughes's] unalienable rights." (ECF No. 1 at 34.) He alleges that Opel "prepared and swore under penalty of perjury false charging documents based on false allegations." (*Id.* at 35.) Opel and Ternent "obstructed justice by intentionally lying about a witness, withholding the witness's name, and refusing to reveal exculpatory information." (*Id.* at 36.) Further, Opel "profiled and dehumanized" Hughes and "consistently made demeaning statements when referring to" Hughes. (*Id.* at 37.) Hughes brings this claim under 18 U.S.C. § 242. (*Id.* at 34.) That statute, however, is a criminal statute and does not have a private right of action. Accordingly, this claim will be dismissed with prejudice.

### M.    FOIA / MPIA

Hughes alleges that he requested information from Ternent and that Ternent "refused to comply." (*Id.* at 43.) He further alleges that he made requests of the City of Cumberland Clerk, Margie Woodring, and that she has not responded. (*Id.*) He argues that this is a violation of the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and/or the Maryland Public Information Act, Md. Code Ann., State Gov. § 10-601, *et seq.* Hughes fails to allege when he made his requests, what information he requested, what information he did or did not receive, and why any of his requests were refused. This alone would warrant dismissal of these claims. Additionally, the Freedom of Information Act applies to federal agencies, and so is inapplicable here. *See* 5 U.S.C. § 551(1) ("For the purpose of this subchapter (1) 'agency' means each authority of the Government of the United States."). And, assuming the MPIA is applicable, this Court does not have

jurisdiction over such a claim, as claims under the MPIA must be filed in a state circuit court. *Sullivan v. City of Frederick*, Civ. No. JKB-17-1881, 2018 WL 337759, at \*8 (D. Md. Jan. 9, 2018) (citing Md. Code Ann., Gen. Prov. § 4-362(a)). Accordingly, these claims must be dismissed with prejudice.

### N.    Conspiracy

Hughes alleges that Opel, Baluch, Pirolozzi, and Bevan "acted in concert with unclean hands" resulting in Hughes's "unlawful arrest and violations of [Hughes's] unalienable rights." (ECF No. 1 at 32.)  Conspiracy is not a distinct tort that can sustain an award of damages on its own, it requires a valid underlying tort claim. *See Windesheim v. Larocca*, 116 A.3d 954, 975 (Md. 2015) ("Civil conspiracy requires proof of three elements: 1) A confederation of two or more persons by agreement or understanding; 2) Some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) Actual legal damage resulting to the plaintiff.").  Because the remainder of Hughes's claims will be dismissed, the common law conspiracy claim must also be dismissed.

Hughes also brings a conspiracy claim under 18 U.S.C. § 241.  (ECF No. 6 at 14.). However, that is a criminal statute without a private cause of action.  *See Monbo v. Upper Chesapeake Med. Ctr., Inc.*, Civ. No. CCB-21-4, 2021 WL 3725990, at \*2 (D. Md. Aug. 23, 2021). Accordingly, this claim will be dismissed with prejudice.

## IV.    OTHER PENDING MOTIONS

Because the Court will dismiss the Complaints based on the pleadings and documents proffered by Hughes and not disputed by the Parties, the Motions to enter exhibits will be denied as moot.  Similarly, because the Court will dismiss Hughes's claims, the Motions will be denied as moot to the extent that they request summary judgment.

## V.    CONCLUSION

For the foregoing reasons, Hughes's suit will be dismissed in its entirety.  A separate Order will issue.

DATED this ____2____ day of April, 2024.

BY THE COURT:

_James K. Bredar_____

James K. Bredar
Chief Judge